The next case we'll hear is Haggie v. Equitable Production, and I guess it's Mr. Fialk first. Good morning. May it please the Court? My name is Matthew Fialk. I represent Anna Agolli. You just stepped in in the back. With me at counsel table is David A. Branch. Your Honors, before you today is Ms. Agolli's claims for hostile work environment, race discrimination, and retaliation. Excuse me, I called the wrong case. I called a case that we had pulled off the docket, Agolli v. Office Depot. You got my name right. I got your name right. I just got the wrong case. So you're arguing Agolli v. Office Depot. Correct. And again, I represent Ms. Agolli, who's the appellant. Ms. Agolli was employed by Office Depot from 2007 to 2008. She claims that she was the only Caucasian employee in her store location, and that basically from the start of her employment she was subjected to sexual harassment, physical threats, non-sexual harassment, disparate treatments because of her race. And then over the course of her year plus with employment, she complained multiple times to the store and to corporate and was eventually terminated for an alleged offense that she claims that basically all the other African American employees had done the same thing as she did. The district court said all of the claims were barred for different reasons. Why don't you tell us why? Do you think the district court was incorrect on any of those decisions? Certainly. So the district court found that the hostile work environment claim was time barred because Ms. Agolli had filed her claim more than 300 days after any of the events in the hostile work environment. The district court further found that the race discrimination and retaliation claims were barred because she hadn't raised them at all with the EEOC. The issue today is basically whether the... Why don't you take them in order the way the court did it. What about the 300 days? It looks to me like the last act of hostile that would support hostile work environment was more than 300 days. No, your honor. The termination is part of the hostile work environment according to Ms. Agolli. It's not in your complaint. I don't know whether it's in the complaint or not. I don't know why termination is a hostile work environment. It's the adverse employment action. Well, your honor, numerous courts of appeals have actually ruled that adverse employment actions can be component acts of a hostile work environment claim. Let's see. The second circuit in Patterson v. County of Oneida. That's 375 Third Federal at 206. What did it hold? It held that a series of discrete employment acts can support a hostile work environment claim. More recently, 2011, the D.C. circuit. Well, I'm suggesting to you that the hostile acts, you have to have one of those hostile environment acts within 300 days. And the last hostile environment act occurred before that. You can, what occurred on the last day was just a simple termination. Correct, which Ms. Agolli contends is a component act of the hostile work environment. You allege that's retaliatory. Ms. Agolli alleges in her EEO documents that basically the termination is the combination of a retaliatory and discriminatory hostile work environment that includes all these claims. The sexual harassment, the non-sexual harassment, the physical threats, pervasive retaliation. Do you have to allege in the complaint that the discharge was part and parcel of a hostile work environment? I'm not sure whether it is. I'm also not certain whether that is. Not in the complaint. Hypothetically, I don't think it's in the complaint. Let's assume it's not in the complaint. Don't you have to allege it in the complaint? No, your honor. I mean, I think. If you want to claim that that's part of the hostile work environment. No, and I don't think it's necessary. I mean, typically in discovery, these are the kind of issues that are hashed out. I think we would. Let's accept your suggestion. I don't know of a court that has said the act of terminating is hostile sexual conduct. You have to look at the acts that constituted the hostile, that made up the hostile environment. And the case you cited from the Second Circuit said you can have a combination of multiple acts, and that's absolutely true. You probably need that, usually. But the question is, when you focus on an act, if somebody comes up and says to you, I really like your new glasses today, that wouldn't be a hostile act, and it wouldn't constitute it. And somebody comes up and says you're fired today, that's not a hostile act based on sexual harassment. Oh, well, no, your honor. I mean, we're not. The question is, when was the last act constituting hostile work environment? Well, again, I don't think. Carried out in her complaint, and I think it's more than 300 days. Well, we can't disaggregate sexual harassment from non-sexual harassment, from discriminatory harassment, from retaliatory harassment. It's all hostile work environment. There are different types of harassment, but it's one hostile work environment claim based on multiple factors. You used the word retaliatory harassment? Correct. Well, I'm not sure that's alleged either. You have a bunch of claims, and they're all blurred and combined, and the district court tried to sort them out, and sorted out the hostile work environment and said the last act was more than 300 days. And you're suggesting that the only act that falls within the 300 days is the termination. And so that is a question of law. I'm not sure that there's been a case that tells that. The other acts that you have in there that support the retaliatory claim, you can address why the court was wrong on that if you wish. Okay. Well, can I provide one more point on the other issue? So, you know, I do want to emphasize that we shouldn't be disaggregating retaliation, retaliatory harassment. Retaliation can't separate them from the sexual harassment. Yes, you're correct. There's no allegation of sexual harassment within the 300 days. Different claim. Because it's one hostile work environment. I would direct your attention to the First Circuit case O'Rourke v. City of Providence, 235 Third Federal 713, as well as the Sixth Circuit case Williams v. General Motors Corp. at 187 Third Federal 553. Both of these cases recognize that you frequently have these hostile work environments where there's sexual harassment, there's opposition by the employee to the sexual harassment, and then there's retaliation by the actors involved in the sexual harassment. And it's all one hostile work environment. That's the claim that Ms. Aboli is making here. So I think it would be an error to separate and look at and ask whether she separately stated a claim for retaliatory harassment, whether she separately stated a claim for sexual harassment, whether she separately stated a claim for discriminatory harassment. The question is whether all these allegations together state a claim for hostile work environment. And our answer to that question is absolutely. Now on the question of the race discrimination and retaliation claims. Now the religious discrimination, you abandoned that? Correct. The race discrimination, retaliation claims, the district court dismissed those claims on the grounds that they weren't stated in the charge. So the question we need to discuss is what is the charge here? Our position is that… Is this a continuation sheet issue? Correct. Our contention is that, well, these aren't two separate documents. The charge and the continuation sheets are the charge. Continuation sheet page one is page two of the charge. They were filed separately. They were filed one day apart. Filed the next day? The first page was filed first and then the continuation sheets were submitted to the EEOC the next day? Correct. Both times. How many continuation sheets were there? It's about 22 pages. And then the EEOC, they didn't forward them along, the continuation sheets? They didn't forward any of them. They forwarded just the charge form itself to Office Depot. Allegedly. So the employer didn't get the continuation sheets? That's what they've stated. And your point is, I assume it's not your fault that the EEOC's obligation to do it? Exactly. It's neither Missigoli's fault… First of all, it's not Missigoli's responsibility to do this, it's the EEOC's. Second of all, it would be Office Depot's responsibility if they're looking at the charge and they see language indicating that there's more documentation, they should call up EEOC and say, where's the additional documentation? I mean, anecdotally, this is a… But under the regulations, the EEOC's only obligation at this point is to forward on the charge. And again, Your Honor, the continuation sheets are the charge. And this is something that's routinely… The charge talks about that. It says you can use continuation sheets on the charge. Exactly. It says go ahead and do it. And anecdotally, I mean, this is routinely done because they give, you know, a couple inches, especially if you have a hostile work environment claim like this, you can't possibly fit 10, 20, 30 different individual acts in this small space. What if the continuation sheets had been filed a week later? If they were filed a week later, they would have been untimely. So what makes them timely here? Well, they were filed on the 299th day after her termination. Her charge was filed on the 299th? No, her charge was filed on the 298th day. The continuation sheets were filed on the 299th day. So if your point is that the continuation sheets have been filed within the 300 days, and you say they were, they're part of it. Correct. And the judge missed it on that point. I mean, they're explicitly incorporated by reference. But if they don't have any substance to them anyway on the race and retaliation claims? If they don't have any substance to them? If they don't have any substance, what would be, is there a harmless error doctrine or something that applies here? I would imagine that if there is absolutely nothing in the continuation sheets at all, then it's not really even a relevant question. Here, there's a wealth of information in the continuation sheets. I mean, yeah, they're long. It's 20-some pages. And again, Ms. Sigal is not an employee. Refer your honors to the Alvarado case. Let me make sure on the timing part. Your position would be, say, if the charge form was filed on day 100, that there could be additional documents forwarded to the EEOC at any time in the couple of days from day 100, and they would be obligated to take those, pass them to the charge, and send them to the court? I wouldn't want to draw a line like that and make a bright line like that. I mean, here, this is… Well, I mean, we have to have a legal principle that allows us to accept the argument that you make. And that's what I'm looking for. If you have the charge form filed at one point in time and other documents filed at another point in time, what's the legal principle on how you resolve the efficacy of these additional documents? The only… The issue is that Ms. Sigal, in the charge, said, see attached to the continuation sheets. They were dropped off the next day at Office Depot. I mean, it's not like in the Ballas case where there's some later letter sent in to the EEOC that said, please amend this. Ms. Sigal says right on the actual charge form, see attached continuation sheets. Again, this is something, a routine procedure that's used in the EEOC. When they got it, on the face of it, it was incomplete. I'm sorry? On the 298th day, when the EEOC got the cover sheet of the form, it was an incomplete form. Right. On the 298th day, when Ms. Sigal sent in just the charge form itself, she hadn't submitted all the documentation that she intended to be part of her charge. And that was apparent on the face of it. It was apparent on the face of it. And on the 29th day, you say it was all there. Correct. Now, where in the continuation form does she complain about retaliation? Over and over again, Your Honor. I mean, again, they're lengthy. We cited, beginning at page 25 of our principal brief, we identified numerous quotes from the continuation sheets with citations to the applicable page. So, Ms. Sigali states on, I think it's page 42 or 43 of the joint appendix, that... Which one? 42 or 43, which one? Or both? Let me verify. I think it begins on 42. Well, there's a little caption there that says retaliation on page 43. Right. So, this is the fourth claim that she notes. And I'd point out that she actually identifies the numbers are different claims. So, four is retaliation. Bottom of page 43. Right. Begins her discussion of retaliation. So, I mean... I know. But I've read that paragraph. And I'm interested in you telling me where it says that she was retaliated against, adverse action taken against her because she exercised a right. I complained about the lack of training, refusal to train, the expectations that I should have taken training home with me rather than do it on paid time. Resulted in getting a disciplinary action. Put in my file. She says... On... Court's indulgence, please. I don't know. Earlier, I'm struggling to find the citation. But she does state, they fired me on October 31, 2008, just days after I sent Keena Simpson an exhibit from a sexual harassment incident. Yes. She states, I was fired a few days afterwards, which I believe was a result, culmination of the violations I endured in my complaints to corporate and law enforcement. And I think... So, what claims are you asserting now? You're asserting discrimination by reason of race? Correct. Are you asserting discrimination by reason of sex? Correct, in the form of sexual harassment. Well, that's discrimination... Correct. ...that the statute provides. And retaliation because of her making those claims? Of complaining to corporate of race discrimination and sexual harassment. Okay. And the sexual discrimination is based on a hostile work environment, and the racial is based on a hostile work environment, right? Well, I mean, it's our position, I suppose, that hostile work environment includes elements of race discrimination, retaliation, sexual harassment. Well, they hired her as a white, and the best you can claim, I suppose, is because she was the only white, maybe, they treated her hostilely in the workplace. That's your argument, isn't it? I'm sorry, I don't understand. Well, I'm trying to sort this out. I mean, your argument is almost as confused as the charge. You have to bring it under a statute of the United States. I mean, Title VII has provisions that you discrimination by reason of race or gender or sex. And I gather the basis for making those claims is that she was, the workplace was hostile by reason of her being a female and by reason of her being a white. Correct. I mean, she contends, cites numerous examples of... And retaliation because she complained about that. Correct. All right. Now, the court threw out the first two because of time limitations, right? The court threw out the hostile work environment claim on timeliness. And the court said the retaliation wasn't sufficiently alleged. Retaliation and race discrimination weren't sufficiently alleged. Well, what's the race discrimination? I thought that's the hostile work environment behind reason of race. That's included in it, but there's a race discrimination claim relating to her termination. How do you define race discrimination? She alleges that when she was terminated, the offense for which she was allegedly terminated was... Basically, they're claiming she didn't follow this Office Depot policy. And she says that, well, all the other African Americans at the store, they were doing the exact same thing that she did in this situation, but there were no repercussions. So there's a substance of disparate treatment claim for the termination. Okay. You've got some rebuttal. Mr. Bayless? Good morning, Your Honor. Excuse me, Mr. Cram. Yes, Your Honor. Right. I'm not doing this too well. My name's Kevin Cram from Littler Mendelson, and I'm here on behalf of Office Depot with my colleague, Jamie Novikoff. Rather than repeat all the arguments that we've made in our briefing papers, I just wanted to address one of... Judge Motz misunderstands Title VII's 300-day statute of limitations and focuses on his use of the word in his memorandum opinion complaint instead of charge. And I just wanted to discuss that briefly. Although words are important and words matter, in this instance, there's no change to the outcome. At no time did Office Depot contend that Title VII's statute of limitations is tied to the filing of a complaint with the federal court. And in granting our motion to dismiss, he cites to Title VII's provision, which is the statute of limitations that deals with you must file with the EEOC within 300 days of the alleged bad act. And so I just wanted to briefly raise that issue. I don't see it as much of an issue, but I wanted to hit on it because... Which issue? The issue of Judge Motz's memorandum opinion citing indescribing the statute of limitations of Title VII using the word... Instead of charge. That's correct. As to all of the counts were dismissed, some of them are found to be time-barred. And then Counts 1, which was race discrimination based on alleged disparate treatment. Count 3, retaliation. And Count 4, religious discrimination. Our position is that Judge Motz correctly dismissed those and determined that at the motion to dismiss stage that plaintiff could not demonstrate that she exhausted her administrative remedies. And if you go to the face of the charge, which is Joint Appendix Document 22... Your position is that we shouldn't count the continuation sheets as part of the charge. That's right, Your Honor. You didn't come up with that idea. In court, the judge came up with it. You didn't come up with it. The judge came up with that idea. You cabbaged onto it. We argued failure to exhaust. It came up here. I don't know that it was a post hoc argument. I think it was. Go ahead. Below in our... Let's set that aside for a moment and include the continuation pages. Why isn't there retaliation claim alleged there? Based on what your colleague pointed to. I think as counsel noted, and if my interpretation is incorrect, I think he conceded to the court that he could not locate where there's a clear, concise statement alleging retaliation. I don't know if it would be clear and concise. The question is in substance was there alleged. He pointed out two things. On page 42, he said that... 43. He said that I complained about the lack of training, refusal to train, and taking training home resulted in my getting disciplinary action put in my file. That I was taking too long to train. There were problems with computers. That was one thing he pointed to. The other thing he pointed to was that after he had complained about what was a sexual harassment, she was fired. Your Honor, I think respectfully that going to the substance of the continuation sheets necessarily overlooks the predicate, which is in order to look at the substance in those documents... Will you answer the question? I'm assuming the documents are in right now. And then you can give that argument later. Okay. So assuming that she... It still fails for the reason under the EEOC's implementing regulations 29 CFR 1601.12 require it's A3, a clear and concise statement of the facts, including pertinent dates. I'm aware of the case law that says that the courts know that complaining parties or charging parties are not experienced lawyers and don't necessarily know how to write things the right way. But even the most liberal reading of these attachment sheets leaves one, as it did Judge Motz, as he says in his memorandum opinion, they're so rambling and confusing that they violate the statute, the EEOC's implementing regulations. How about on page 42, kind of in the middle of the page under number two, there's a sentence that says, I was fired a few days afterward, October 31, 2008, which I believe was as a culmination of the violations I endured and my complaints to corporate and law enforcement. Why wouldn't that be a sufficiently stated claim of retaliation? I think it is a sufficiently stated claim, assuming that was part of the charge, but it's not part of the charge. You sort of concede then it's alleged if the continuation are part of the document. Can you, well, whether she says because I alleged that I was retaliated against when I was terminated, is that the? But retaliated against on what basis? Retaliated against because I engaged in prior statutorily protected activity. Retaliated against because she was held accountable for poor performance and engaging in gross misconduct. She doesn't stay and so unless she identifies the prior protected activity that she engaged in in a retaliation claim, then no, I don't concede. You're backing off your concession. I am, your honor. All right, you can argue the continuation sheet if you want. Two weeks after we filed our papers in this case, this court ruled in Bollas a fairly analogous situation where a charging party after, it was after the charge was filed, submitted a bunch of letters to the commission. I shouldn't say a bunch, I frankly don't recall how many were sent to the commission. But the long and short of it is that the court rejected the argument that anything other than the charge is the charge. But in Bollas the charge didn't say and I'm going to send you some more letters later on. That's right. Well, so. Here it does say see the attached for general information. Right. And they came in later. Joint Exhibit 22, which is the charge of discrimination that Ms. Agole filed, says see attached for. Your position it's the charge. That's correct. It's 22 through 43 or 44. Actually that's, in addition it's not only our, it's not only Office Depot's position, it is also the EEOC's position that this and only this document, Joint Appendix 22, is the charge. Because in March of 2010, the EEOC office faxed to Office Depot a copy of what it considered to be the charge. This document, Joint Appendix 22, the standard. What date did they fax that? They faxed that on March 16, 2001. And below in the motion to dismiss before Judge Motz, Office Depot. 2001? I'm sorry. What did I say? March 16, 2011 is when the EEOC finally got around to providing Office Depot with notice of the charge. And at no time did Office Depot ever receive a copy of any of the continuation sheets. Let me ask you, if you received these two pages simultaneously, would there be any question that the continuation sheets were part of it? If we received the charge together with the continuation sheets? No, Your Honor. We would not dispute whether one or the other constituted the charge. Whether they were part of the charge. I agree with you, Your Honor. Yes, we wouldn't dispute that. And it says at the top of the charge, at the top of page 23. That's the first page of the continuation sheet? Right. Well, that is what I don't... EEOC complaint, August 25, 2009. August 25, 2009 is the date stamp on the page 22 that you say is the charge. It says it's the continuation sheets of that complaint of August 25. So it's identified plainly for you, and you're a lawyer. She's not. Yes, Your Honor. You can figure that out. I can figure that out. You can figure that out. And you can figure it out all the way through page 244, I suppose, too, where she signs it at the end and puts the same thing at the top on every page. Your Honor, in order to accept the plaintiff, Ms. Agoli's, argument, in the body of her charge, she says, see attached for general explanation, comma, and ongoing info also. So extending her logic as to why the continuation sheets, which were not contemporaneously filed with the EEOC and which were not served on Office Depot, we would also have to read into her charge the ongoing info also. What would have happened if the continuation sheets had been filed with the charge and the EEOC only sent you the page 22 and they just didn't send you the other stuff? Well, we live in an imperfect world, but the Commission has a statutory duty to properly serve the charge of discrimination as it considers it to be to any respondent or any employer. And in this instance, there's If you'd gotten the page 22, that's all you got. That is all we got. Well, let me finish up my suggestion here. So that's what you got. However, the other 23 through 45, that was attached when she filed it. We're going to just assume that. That's a hypothetical. Understood, Your Honor. But the EEOC screwed up. They didn't send you the rest of it. They just sent you page 22. What would be your position in that circumstance as to whether or not the allegations made in all the other pages were part of the charge? My response to that is that it is the EEOC, not Office Depot, that has the statutory duty and is the subject matter expert of correctly serving. The question is, would that still be part of the charge, even though they messed up? No. They determine what the charge is, and they made a determination. And what if they're wrong about it? Can we conclude that they are wrong, that that was not the charge? Not at all, Your Honor. But that, I think, places You just agreed with me earlier that if these two things were filed simultaneously, you would say the continuation sheet's a part of the charge. That is true. Well, isn't that something that we could conclude to? No, not based on the record. Why would the EEOC How could the EEOC say the continuation sheets were not part of the charge if they were filed simultaneously? What would be the basis? That they were not filed simultaneously? Listen, if the charge and the continuation sheets were filed simultaneously, what would be the basis for the EEOC to say that the continuation sheets were not part of the charge? That they don't That they're so rambling and circuitous It's going to the merits, though. It's going to the merits. You may well win on that. That's a determination, though. That's another deal. That the commission That's another deal. That's not the question that you've been asked here about three times that you've never answered. Which is whether the continuation What basis could the EEOC say that the continuation sheets were not part of the charge? That they fail under the EEOC's implementing regs Still be part of the charge. It may be a defective charge. It's the EEOC that decides what constitutes the charge. And if the EEOC had considered that this was a defective charge, there is in the statute a mechanism for amending a deficient charge. And that never occurred in this case. Except that wasn't the issue. The issue, she says, C attached for general explanation. This is on her charge. And then she attaches 23 pages. And the EEOC comes in and says, Oh, we're not going to consider the 23 pages and not look at them because they're not clear. Could they do that? Yes, they have the authority. Otherwise, if they were to allow every type of It was a 23-page, single-spaced. And there'd be nothing we could do about it. You could. No, it still doesn't deprive. It still doesn't. The fact that she failed to exhaust administrative remedies, that hurdle still has not been overcome. Because when the EEOC did its investigation, its investigation was based solely on the charge that was served on us. To start off with the question, we were assuming that page 22, 23 through 45, they all get filed together. And the clerk at the EEOC makes a mistake. And they only send you page 22. What we're trying to get at is that your position, that because of the clerk's error at the EEOC, the plaintiff is not allowed to count pages 22 through 45. And that example is part of the charge. This is something that she had. Your Honor, I respectfully submit that that ship has sailed. She had an opportunity while Can you answer the hypothetical? We're trying to get at some legal principles here. If she contends that the EEOC committed an error and how it construed the charge You just don't want to answer the question. No, I That's a bad procedure for lawyers that come down here. You should come down here and answer the judge's questions. If there's a mistake That should be your rule number one. Yes, Your Honor. If the EEOC made a mistake, then her recourse is with the EEOC, but not with Office Depot. Well, have you ever heard of Edelman v. Lynchburg College? Four-circuit case written by former Chief Judge Wilkins. Off the top of my head, no, I don't recall, Your Honor. They held or said that a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude the claims. Judge Wilkins, Judge Beezer, the Ninth Circuit, and Judge Ludig dissenting. Well, Judge Motz addressed both of these issues in that preliminarily he said, number one, she failed to exhaust administrative remedies. And in the alternative, he held that even if we counted those 22 to 23 continuation sheets, and it's in his footnote one, Your Honors, of Judge Motz's memorandum opinion, which is on joint appendix page 48, he held that plaintiff asserts that allegations concerning her claims for race discrimination, retaliation, and religious discrimination are contained in continuation sheets appended to her EEOC complaint. There is no evidence, however, that the continuation sheets were ever provided to Office Depot. That's correct. Your position is that footnote one is an alternative, is holding an alternative. That's right, Your Honor. Because then he goes on, moreover, the description of the basic, the long and short of it is the content of the continuation sheets is, as Judge Motz determined based on reviewing them, so disjointed and rambling, it is not sufficiently focused to alert either the EEOC or Office Depot to the claims the plaintiff now seeks to resurrect. And so I think that this hypothetical issue that you've been addressing was considered by Judge Motz in that he did it, he made his dismissal in the alternative. And plaintiff has not cited any authority that, statutory authority or by law, by court precedent, that requires an employer to affirmatively seek  such as it did in this instance. What if the EEOC receives a charge that is completely appropriate in form and fails to ship it out to Home Depot? Does that eliminate the charge? No, it does not, Your Honor. In that instance, a number of things might happen. From a practical standpoint, the respondent would never, or the employer would not be served a copy of that charge. And so the commission eventually would get around to either sending a letter to the employer or issuing a cause finding taking an adverse inference. There's a lot of other things they could do. But in that instance, as Judge King pointed out, the case that you mentioned, clearly in that hypothetical, the charging party could seek redress from the commission's error. Well, it seems to me if that is the position you would take in that hypothetical, then you would have to take the same position in the hypothetical in which the charge is filed simultaneously, this whole document is filed simultaneously, and the commission only sends out the cover sheet and fails to send out the continuation sheet. It still would be a mistake, right? That would be a mistake. And you would have the same remedies that you had if they didn't send it out at all. That's correct, Your Honor. In this case, though... So the question in this case comes down to the fact that she filed the continuation sheets on day two and the cover sheet on day one is a fatally defective error for her. That's your position? Yes. And what's the authority for that? The authority for that is, first, the Congress's intent in seeking voluntary compliance with the law and effectuating settlement and conciliation before resorting to litigation. And the reason that Congress wrote the statute of limitations as it did, as 300 days... I'm assuming day one and day two are both within limitation. Okay. That's, in fact, the case in here. I mean, it's 299. You agree that cover sheet's 298, day 298, and the next sheet's 299. Isn't that right? That is true. Okay. Well, Ballas supports our position, I think, Your Honor. And Ballas goes on to describe how the Fourth Circuit, at great length, went through the congressional history of the statute of limitations I'm talking about filing your complaint in two stages. Let's take a hypothetical again to keep you on track to my question. The complainant files her cover sheet on day 10, and she files the continuation sheets on day 11. You say, in principle, that that's defective and the charge has not been filed properly. And I'm saying, what's your authority? We say we don't decide who files the charge properly. It is the commission, and authority is in 1601.12a.5b, which provides that if the commission determines that there's a fault in the charge, then the only way to fix it. My question is, is there a fault? What's the authority that you can't file a complaint on day 10 and day 11? How about if you made it this clear? You put a cover sheet on and said, this is my general charge. I've got attachment sheets, and I'm going to file them tomorrow. And then tomorrow you file the attachment sheets. And it says, this is an attachment and part of my complaint filed yesterday. Can you do that? I didn't ask that. Can you do that under the law? Yes. If you want to go into the commission and say, I insist on filing this charge, it is completely vague and it has nothing in it, and it says, see attached. That's not my hypothetical. My hypothetical says it's a cover sheet like this, but it's clear. It says on the cover sheet, I'm filing a general charge based on a, b, and c. The details will be attached, and I'm going to file those tomorrow. And on tomorrow, the cover sheet says, this is the attachment to the complaint I filed yesterday, the charge I filed yesterday, and is the detail. Is that illegal? Yes, Your Honor. Under what provision? It's an imperfected charge. Do you have any other cases other than that? Balas? Is that the best you can do? Balas is the best that we have. That's the best you can do? If you give me one moment, Your Honor, I understand I'm on read right now. That didn't involve this scenario that Judge Niemeyer found. That's true, Your Honor. It does not involve that scenario. That's right. It does not involve the scenario we have here today. But that's your best authority. At this present moment, and I can see that it's factually distinguishable, but the analysis that the Fourth Circuit used applies directly in this case. The other case that is on point in this action for failure to exhaust is the Miles case. And in the plaintiff's papers, she points out that the fact that she checked off certain boxes is sufficient in and of itself to provide the respondent with notice of the charge and an opportunity to respond. But what we have in this case is that the charge itself contains no information. Again, my argument assumes that the charge is at least When you say the charge, you're referring to page 22. Yes, Your Honor. You're excluding all the continuation sheets that were filed on page 299. And that's precisely what the PSD. We understand. Okay. When he says the charge, he refers to all of them. That's correct. Okay. Thank you. Thank you, Your Honor. Yes, sir. Mr. Fryock, you have some rebuttal. Thank you, Your Honor. Just a few quick points. I want to emphasize that Ms. Agulli did everything she should have done, could have done to make sure these continuation sheets were properly presented to the EEOC. No, she didn't. She could have filed them all the same day. She could have filed them. That's true. She didn't do everything she could have done. She didn't do that. Notwithstanding what the facts are here. Well, she didn't file them the same day, no. First of all, let me point out that that was never an argument raised before the district court, so we haven't had an opportunity to develop a factual record on why there was that one day. Putting that issue aside, I don't think that there's any authority. Office Depot certainly couldn't point to any that would say that this is filing the charge form on day 298, saying I have additional sheets, providing the additional sheets on day 299. Office Depot can't point to any authority whatsoever that says this is an incomplete charge or deficient charge. All the paperwork is submitted timely. What would have happened on the top of page 23 if the language in bold and it's continued on each one of the other pages that says complainant continuation sheets gives the date of the complaint? What would happen if that wasn't on there? The top of page 23, the bold at the top and all the other pages. What happens if she wouldn't have put that on there and you just had the text? Would that make a difference? I suppose we would have to look and see if the charge form that the EEOC provides on day 22 indicates that there are continuation sheets. If there's an indication as here that there are continuation sheets, then there's no other reasonable conclusion to draw but that the continuation sheets are intended to be part of the charge. It's not a situation like in the Ballas case. What I just asked you about, there wouldn't be any indication on this later filing that they were part of the prior charge or that they were continuation sheets. You take the bold printout. You take the bold printout? I mean, I think all things together considering the charge form on J22 says that there's continuation sheets. Once the EEOC gets the continuation sheets the next day, what other reasonable conclusion could the EEOC draw in that situation? I don't want to belabor this, but if it doesn't say on there it's continuation. We were trying to arrive at some legal principles to decipher this case and neither counsel has been frankly that particularly helpful in getting us to that point. I think the legal principle is one that has to be decided on a case-by-case basis. Is there something that shows that the document that the employee wants to be part of the charge? Is there a reason to think that this is part of the charge? What's the purpose of the charge in the EEOC? The purpose of the charge is to initiate EEOC proceedings. For what purpose? For the statutory requirement to exhaust administrative remedies to attempt to have EEOC to resolve the matter. Correct. Avoid legal. Correct. And, I mean, I can't imagine that Congress would have intended the employee to suffer because of the EEOC making an administrative error. She may suffer because she just wrote a rambling recitation of her notes that she took every day at work or whatever they were. I mean, I must say that this is about as difficult as you can get to read. You know, I mean, I just have to emphasize the Alvarado case says it should be construed with the utmost liberality. Mr. Goley is not an attorney, obviously. You know, it's not how an attorney would write it. Let me ask you this. Whose handwriting is that on top of page 23 and at the bottom of page 44, if you know? Or maybe on page 45. Is that your client? I believe so. So, at the top of page 23, she has the charge number. Right. Like file number. Right. Which looks to appear to be the same one that's on page 22. Correct. But do you think it's your client's handwriting? I believe it is. Okay. Rather than someone at the EEOC. No, I don't think it's the EEOC. Not written by somebody at the EEOC.  Okay. Well, the Postal Council argues that we go beyond this argument that the District Court made a holding in the alternative in footnote one of its opinion. What would you say is our standard of review for that alternative holding? That even if we accept all these additional pages as part of the charge, it just was too rambling, incomprehensible, and I'm dismissing it on that basis. What's our standard of review for that? Your standard of review is still de novo. It's not a factual finding. I think as a matter of law, you can determine whether this meets what few standards there are. What if we agreed that it is too rambling to really comprehend what's going on? What would be the sanction? If it's too rambling to understand what's going on. I mean, if it's too rambling, then I suppose, then she... I don't know if there is a sanction. I haven't seen it. We've concluded that that would be a failure to exhaust. And there's no authority cited by the District Court or Office Depot to support the position that a rambling EEOC charge is insufficient. There isn't any. And again, going to the Alvarado case. He did a disjointed rambling and not sufficiently focused to alert either the EEOC or the Office Depot to the claim. Well, Mr. Cram just conceded that he understood the language. I know, but that's what it says. I mean, the judge said that right here in that footnote. Understood, and without any citation to any statute, there's no pleading standard. This can't be understood. It can be. I don't understand what he's saying. He says you can't understand it. Respectfully, Your Honor, you can't understand the charge or the continuation sheets. They're long. They're not organized. Mr. Cram just conceded up here that the passage that you read, Your Honor, is understandable as a retaliation claim. Yeah, it takes a long time to get to it. But when you come down to it, when Ms. Ogole specifically says, I was terminated because I submitted documents in a sexual harassment claim, there's no ambiguity there. It's absolutely understandable by reading the document. Yeah, it's going to take a long time to read the entire thing, but that's not a basis to dismiss it because it's long. Okay, thank you. I think we understand. Okay. Do you want to go on? Do you want to take a break? I have nothing further than that. Okay. We'll come down to Greek Council and proceed on to the last case.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee